UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 20-10454 |
| | ) | |
| BRIAN S. MARTIN, | ) | Honorable Janet S Baer |
| | ) | |
| Debtor. | ) | Chapter 7 |

**BRIAN S. MARTIN'S RESPONSE TO AMERICAN HONDA FINANCE CORPORATION'S MOTION TO DISMISS CHAPTER 7 <u>BANKRUPCY PURSUANT TO 11 U.S.C. § 707(a)</u>**

The Debtor, Brian S. Martin (the "Debtor" or "Brian") hereby responds in opposition to American Honda Finance Corporation's ("AHFC") Motion to Dismiss Chapter 7 Bankruptcy Pursuant to 11 U.S.C. § 707(a) [ECF No. 51] (the "Motion") and requests that the Court deny the Motion.

## I.  <u>INTRODUCTION</u>

1. The Debtor is a married individual (currently separated) with two minor children. The Debtor is the sole member of SHG of Illinois, LLC, a limited liability company ("SHG") that operated a motorcycle dealership known as "BBK Motor Sports" located at 227 DuPage Street, Elgin, Illinois 60120 (the "Elgin Property"). The Elgin Property is owned by Martin Adams, LLC ("Martin Adams"); the Debtor is the sole member of Martin Adams.

2. On January 15, 2011, the Debtor executed a Continuing Personal Guaranty (the "Guaranty"), whereby he guaranteed SHG's obligations to AHFC that were then existing as well as future obligations. On March 22, 2016, SHG executed a Wholesale Finance Agreement with AHFC for a wholesale line of credit and a Wholesale Finance Security Agreement.

3. SHG and Martin Adams incurred other substantial secured and unsecured indebtedness in connection with the operation of the motorcycle dealership. The Debtor personally guaranteed most of this indebtedness. Prior to the commencement of his case, the Debtor was sued, threatened with suit, and suffered judgments relating to his personal guarantees.

4. In 2018, SHG experienced financial losses, was no longer able to continue as a going concern, and ceased operations. Most of SHG's assets were either repossessed by its secured creditors or sold at auction by a liquidator. As described below, the Elgin Property is currently the subject of foreclosure proceedings. SHG's remaining assets are approximately $21,000 of motorcycle parts, which remain at the Elgin Property.

5. In February 2019, the Debtor was employed as a sales manager at Woodstock KTM and Triumph by the Windy City Motorcycle Group, a retail motorcycle dealer. He currently manages the used motorcycle store and business development center for Windy City. From the end of March 2020 until May 2020, the Debtor was voluntarily furloughed due to COVID. The Debtor's wife, Lara Martin ("Lara") is employed by a hospital as an in-patient senior physical therapist and worked with COVID patients throughout the pandemic.

6. On May 5, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Code, (the "Bankruptcy Code"). His debts are primarily business debts, which exceed the chapter 13 debt

limits contained in 11 U.S.C. § 109(e). His total liabilities are approximately $1,539,177.20.

7. On January 8, 2021, AHFC filed the Motion, in which it seeks to dismiss this case pursuant to 11 U.S.C. § 707(a). On January 27, 2021, Honda Federal Credit Union ("Honda") filed an action in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois, as Case Number 21-CH-00023 (the "Foreclosure Action") against Martin Adams, the Debtor, Lara, and Snap Advances, LLC ("Snap Advances") to foreclose its mortgage lien on the Elgin Property. Snap Advances has a judgment lien on the Elgin Property pursuant to a judgment in the amount of $343,919 dated October 15, 2019 and recorded on October 16, 2019. Honda alleges that the amount owed pursuant to its mortgage is $532,781.10 and that Lara is personally liable for any deficiency.

## II. ARGUMENT

### A. THE MOTION SHOULD BE DENIED BECAUSE THE DEBTOR HAS NOT UNJUSTIFIABLY REFUSED TO PAY HIS DEBTS.

8. The Motion should be denied for AHFC's failure to establish "cause" for dismissal pursuant to 11 U.S.C. § 707(a). Section 707(a) provides that the Court may dismiss a case for cause, including—

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

3

11 U.S.C. § 707(a). "Section 707(a)'s 'for cause' dismissal, compared to dismissal under section 707(b), is 'a more open-ended inquiry'" *Lattner v. Smith (In re Smith)*, Bankr. No. 20-41452, Adv. No. 20-00328, 2021 Bankr. LEXIS 328, at *5-6 (Bankr. N.D. Ill. Feb. 9, 2021). In *In re Schwartz*, the Seventh Circuit explained:

> The *Zick* opinion that we cited states that a bankruptcy petition generally is denied under section 707(a) "only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." 931 F.2d at 1129. That's not the happiest formula. If it is read literally, then "concealed or misrepresented assets and/or sources of income" are grounds for dismissal only if coupled with "excessive and continued expenditures" and with the other terms in the quoted passage; nor is it obvious that failure to repay "a large single debt" is worse behavior than a gratuitous failure to repay multiple debts. So we don't like the formula, but we agree that an unjustified refusal to pay one's debts is a valid ground under 11 U.S.C. § 707(a) to deny a discharge of a bankrupt's debts.

*In re Schwartz*, 799 F. 3d 760, 764 (7th Cir. 2015).

9. "The bottom line is that bankruptcy courts have discretion to dismiss cases for 'cause' under § 707(a) wherever there is an unjustified refusal to pay one's debts (or, presumably, for any other number of non-procedural reasons), regardless of whether the debtors' conduct amounts to 'bad faith.'" *BMO Harris v. Isaacson*, 551 B.R. 376, 383 (N.D. Ill. 2015).

10. In this case, the Debtor has not unjustifiably refused to pay his debts. As described in Amended Schedules I and J, which are attached hereto, the Debtor's major expenses include mortgage payments for the real property located at 295 Valley

4

Way, Burlington, Illinois 60109 (the "Residence"); food and housekeeping supplies ($1,700); childcare and children's education costs ($610); transportation ($850) and vehicle payments ($396) for a 2017 Nissan Frontier; and medical and dental expenses ($1,160). After accounting for these expenses, the Debtor is unable to make regular monthly payments under a chapter 11 plan against his liabilities, which exceed $1 million arising from the failure of BBK Motorsports.

11. The Debtor did not suppress his income by volunteering to be furloughed from his work. He testified that his employer asked for volunteers, and he thought it would be wise to do so, since he had two children, and Lara was working with COVID patients. In August 2020, the Debtor changed positions within his current employment, but this did not affect his salary. The Debtor was able to perform his work remotely and could thus retain his employment during the pandemic. The Debtor contracted COVID-19 in August 2021, and Lara contracted COVID the day after the Debtor returned to work.

12. Contrary to AHFC's allegations, Lara is not "suppressing income" by withholding taxes, because the Debtor had operating losses which offset the couple's tax liability and has resulted in tax refunds to Lara. Lara testified during her Rule 2004 exam that she had not changed her withholding computation since she started her job and that it didn't occur to her to change anything. The Debtor's federal and state tax refunds are not reportable income. Income is generally defined as the revenue a business earns from selling its goods and services or the money an individual receives in compensation for his or her labor, services, or investments. The

term gross income is not defined in the Statement of Financial Affairs, the Official Instructions to the Statement of Financial Affairs, or the Bankruptcy Code. When defining "gross income" for bankruptcy purposes, most courts have adopted the Tax Code definitions. *In re Wagner*, 808 F.2d 542, 549 (7th Cir. 1986). The term "gross amount of income," as used in Statement of Financial Affairs Item 1, should be interpreted consistently with the definition of "gross income" found in the Tax Code. *Frank v. Ward (In re Ward),* 2017 Bankr. LEXIS 219 (Bankr. N.D. Tex. 2017). (Moreover, the Debtor and Lara are likely to lose the benefit of the Debtor's operating losses in the future.)

13. Thus, the federal and state tax refunds and the amount that the Debtor's non-filing wife contributes to her 401(k) are not income. *In re Wagner*, 808 F. 2d at 544. Unlike state tax refunds,[1] which (if deducted on a prior year return) must be reported as income in the year received on the individual's federal return, estimated federal tax payments and federal withholding are income and deduction neutral. Therefore, a federal tax refund is not included in gross income in the year it is received. Thus, the federal tax refunds were not income and were not reportable on the Statement of Financial Affairs.

14. Furthermore, the Debtor's budget contains necessary expenses and does not inflate necessary spending. For example, the Debtor's minor child underwent surgery and might also need a dental implant. The Debtor's other child is scheduled

---

[1] https://www.irs.gov/faqs/interest-dividends-other-types-of-income/1099-information-returns-all-other/1099-information-returns-all-other

to have braces installed shortly as well as required dental implants. In years prior to the pandemic, the Debtor's child-related expenses were higher, because they were involved in more activities and incurred more school-related fees. Such expenses should once again increase when the state of Illinois decreases its COVID-related restrictions. In addition, Lara has annual dues for her physical therapy association. Her employer currently reimburses 50% of these dues. As of the Petition Date, Lara received $200 per year for mandatory continuing education, but she now receives no such funding. She recently spent $450 for a class and $150 for a conference. Contrary to AHSC's assertion in the Motion (and consistent with the Debtor's representations), Lara does have food allergies. She's allergic to corn, sesame, and peanuts and did not realize that AHSC's counsel was inquiring about such allergies when counsel asked: "But I'm just trying to figure out, there's no medical or dietary restrictions, these are just everyday sort of food-related expenses?"

15. Other household related expenses included $3,100 for the purchase and installation of an air conditioner. (The Debtor's previous unit had broken multiple times and was unrepairable.) The Debtor's family's expenses for therapy are $560 per month (four sessions for four people at $35 per person), and the Debtor underwent extra family/marriage counseling that would increase that amount. (The Debtor and Lara are currently separated, and the Debtor is no longer living in the Residence. He is actively seeking a separate apartment to rent, which will increase expenses.) Moreover, Lara is an individual defendant in the Foreclosure Action, in which Honda is seeking a personal deficiency against Lara. If Honda obtains such a judgment and

7

pursues a wage deduction, Lara's available income will likely be reduced by 15%. In sum, the Debtor's expenses are reasonable and necessary, and he has not unjustifiably refused to pay his debts.

B. **THE DEBTOR IS ENTITLED TO A DISCHARGE AND THE COURT SHOULD REJECT AHFC'S INVITATION TO DISMISS THE CASE FOR CONDUCT THAT WOULD NOT JUSTIFY A DENIAL OF DISCHARGE UNDER SECTION 727 UNDER THE GUISE OF A DISMISSAL FOR CAUSE UNDER SECTION 707(A).**

16. The Motion should be denied for AHFC's failure to establish "cause" for dismissal pursuant to 11 U.S.C. § 707(a). AHFC does not challenge the Debtor's eligibility to be a debtor. Section 707(a) dismissal cases are as varied as the debtor's circumstances and provide no clear guidance for decision. In addition to criticizing the weaknesses of the "factor" analysis adopted by other courts to determine when Section 707(a) dismissal is appropriate, the Seventh Circuit stated that a high earning debtor with a high lifestyle may be an appropriate candidate for dismissal. *In re Schwartz*, 799 F. 3d at 764. "Importantly, while the Seventh Circuit adopted the rationale of the circuit-court cases holding that § 707(a) allows for 'bad faith' dismissals, the court shied away from adopting any formalistic 'bad faith' analysis." *BMO Harris Bank N.A. v. Isaacson*, 551 B.R. at 382. The Seventh Circuit expressly rejected the Sixth Circuit's bad-faith test. *Id.* at 383.

17. The Fourth Circuit, while following the majority rule espoused in *Schwartz*, emphasized the limitations on the use of Section 707(a) as an exception to discharge:

> We think the majority view is the sounder one, because it is the most helpful in preventing serious abuses of the bankruptcy process. But acknowledging that bad faith may

> constitute "cause" under § 707(a) also requires that the remedy of dismissal be reserved for cases of real misconduct. Those courts that have found that bad faith in filing for bankruptcy can constitute cause for dismissal have counseled "[c]aution in dispensing the remedy of dismissal for bad faith" because of "the need . . . to maintain the balance of remedies in bankruptcy." *In re Khan*, 172 B.R. 613, 626 (Bankr. D. Minn. 1994). They have accordingly emphasized that the bar for finding bad faith is a high one. *See, e.g., Zick*, 931 F.2d at 1129 (explaining that bad faith exists "only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence"). In short, bad faith exists only where "the petitioner has abused the provisions, purpose, or spirit of bankruptcy law." *Tamecki*, 229 F.3d at 207.

*Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018).

18. AHFC's suggestion that the Debtor can be compelled to "work off" his debts rather than seek relief under the Bankruptcy Code is untenable. *See In re Hardigan*, 490 B.R. 437 (Bankr. S.D. Ga. 2013) (denying Section 707(a) motion to dismiss and motion to convert individual Chapter 7 case to Chapter 11 based on debtor's income capability, noting prohibition of involuntary servitude). The Court should also reject AHFC's invitation to extend Section 707(a)'s "cause" limitation to every bankruptcy case. *Edwards v. Wells Fargo Bank, N.A.*, 311 F. Supp. 3d 746 (E.D.N.C. 2018) (bankruptcy court's Section 707(a) dismissal reversed as abuse of discretion where there was no evidence of misconduct); *see also In re Minick*, 588 B.R. 772 (Bankr. W.D. Va. 2018).

19. Section 727 provides that "[t]he court shall grant the debtor a discharge, unless [. . . ]" one of 12 specifically identified grounds are proven to exist. Section

707(a) cannot be applied to create an additional "equitable" exception to discharge. "[T]he Bankruptcy Code is what it is and cannot be overridden in the name of equity. *Law v. Siegel*, 571 U.S. 415 (2014); *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004)." *In re Burciaga,* No. 19-2246, 2019 U.S. App. LEXIS 36860, at *7 (7th Cir. Dec. 13, 2019). Thus, Section 707(a) dismissals for cause should be confined to cases where grounds exist to bar a discharge under Section 727 or Section 523. *In re Hunt,* 521 B.R. 479 (Bankr. M.D. Pa. 2014) (denying motion to dismiss and observing availability of action to except debt from discharge as more appropriate creditor remedy).

20. The use of Section 707(a) to contradict the specific command of Section 727 must be limited to the most egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and an intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence. Section 707(a) dismissals must be limited to the truly egregious cases involving individuals with substantial means who have flaunted their wealth, continued their lavish lifestyles, and are engaging in creative, elaborate schemes to conceal their assets and cheat their creditors or to otherwise inflict harm on third parties. *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 373 (3d Cir. 2007).

21. This is not such a case. The Debtor has not misrepresented any assets or sources of income. He does not live a lavish lifestyle, and he did not file this case to avoid a large single debt incurred through fraud, misconduct, or gross negligence.

10

The Debtor's expenses are reasonable and not a result of the Debtor flaunting any wealth. He is not concealing any assets or attempting to cheat creditors or inflict harm on any third parties.

22. The Debtor's BBK Motorsports dealership business (his primary source of income) failed in 2018. During 2020, the Debtor was effectively left underemployed. The Debtor has two children, both of whom have been receiving medical treatment for health issues. The Debtor did not incur cash advances or make consumer purchases far more than his ability to pay. The Debtor paid his mortgage and otherwise paid for his family's regular monthly living expenses. The Debtor did not purchase any vehicles or luxury items and does not pursue a lavish lifestyle. The Debtor's proposed family budget is not excessive. The Debtor's major expenses relate to housing, food, and transportation.

23. The Debtor does not have a reasonable alternative to bankruptcy relief. In *In re Killian*, 422 B.R. 903, 911-12 (Bankr. N.D. Ill. 2009), the court held that there was no cause to dismiss the case, even though the debtor's monthly mortgage payments were $4,200, and the debtor had $140,000 of equity in the property. The Court rejected application of the IRS standards to the Section 707(a) analysis. "The difficulty in substituting IRS standard figures for certain Schedule J expenses is that such an approach fails to consider whether the actual expenses scheduled are reasonable in the context of the Debtors' current situation." *In re Cutler*, Case No. 08-15568-AJM-7A, 2009 Bankr. LEXIS 2075, at *16. In this case, the Debtor does not have equity in the Residence, and his monthly payments for the first mortgage

11

(including taxes and insurance) is $2,068 and the second mortgage, which secured the BKK Motorsports debt, is $3,000. The amount of the second mortgage is not deducted from Schedule J, but it remains a secured claim that would be included in a chapter 11 repayment plan.

24. The Debtor's statement of current income and expenses reasonably and accurately reflect his true financial condition. The Debtor has made corrective amendments to his schedules, which continue to demonstrate the Debtor's real and pressing need for relief under the Bankruptcy Code. In sum, the Debtor's financial situation demonstrates that he is entitled to receive a discharge, and there is no cause for dismissal pursuant to Section 707(a).

## CONCLUSION

25. In sum, AHFC has failed to establish any basis to dismiss this Chapter 7 case. The Debtor respectfully requests that the Court deny the Motion; or, alternatively, set the matter for evidentiary hearing to the extent that the Motion is not denied; and grant such other and further relief as this Court deems just and proper.

Dated: February 22, 2021        Respectfully Submitted,

                                By: /s/ Paul M. Bauch

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
Bauch & Michaels, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: (312) 427-5709
pbauch@bmlawllc.com
csales@bmlawllc.com